IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MONICA JEAN GLOVKA,

                Plaintiff,

  v.                                           OPINION and ORDER

MARTIN J. O'MALLEY[1],
Commissioner of Social Security,              23-cv-517-slc

                Defendant.

---

    This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff Monica Jean Glovka applied for disability insurance benefits in February 2021, alleging that she had been unable to work since 2010 because of a combination of impairments, including degenerative disc disease. In order to prove eligibility for disability insurance benefits, Glovka had to show that she was disabled on or before December 31, 2015, which was the date she was last insured under the program. 42 U.S.C. § 423(d)(1)(A); (c)(1). The administrative law judge who denied Glovka's claim at the hearings level determined that Glovka had not met her burden. The ALJ concluded that, in spite of her impairments, Glovka remained capable of performing her past relevant work as a receptionist or order clerk at the time her disability insurance benefits expired.

    Glovka challenges the ALJ's decision on two grounds. First, she contends that the ALJ failed to adequately develop the record and improperly "played doctor" by not seeking a

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. The court has substituted O'Malley for his predecessor as the defendant in this lawsuit pursuant to Fed. R. Civ. P. 25(d).

medical expert to assess Glovka's limitations during the relevant time period. Second, she argues that the ALJ's residual functional capacity (RFC) determination failed to account for the "total limiting" effects of Glovka's impairments. For the reasons stated below, I am rejecting both of these arguments and affirming the Commissioner's decision.

FACTUAL BACKGROUND

Glovka applied for disability insurance benefits in February 2021, alleging disability since January 1, 2010 from degenerative bone disease, anxiety, arthritis, thyroid issues, neck issues, and loss of balance.  As part of the initial disability determination and then again on reconsideration, state agency consultants Drs. Young and Chan reviewed Glovka's available medical records to assess her physical limitations.  Focusing on Glovka's date last insured of December 2015, Young and Chan found that there was insufficient evidence to evaluate Glovka's claim. The agency physicians noted that although there was evidence that Glovka had been diagnosed with degenerative disc disease of the cervical and lumbar spines and had undergone lumbar fusion surgery in 2015, there were no physical exam findings available from which to assess her functional limitations. AR 74-75; 80-81. Accordingly, the agency denied the claim for insufficient evidence.

Glovka requested a hearing, which was held telephonically on October 26, 2022, before ALJ Michael Schaefer. Glovka appeared with a non-lawyer representative and testified. The ALJ also heard testimony from a vocational expert. During the hearing, in response to the ALJ's inquiry about potential outstanding records, Glovka's representative stated that he did not expect any further records to come in. AR 34. Glovka later testified that the doctor she had seen during the relevant time period of 2015 had since gone out of practice, and none of her

records were accessible. AR 43. The ALJ noted that the lack of functional assessments from 2015 "put [him] in a difficult position" because he couldn't "play doctor." AR 36. The ALJ said that he'd consider whether to issue medical expert interrogatories, adding that in his experience, such interrogatories were not usually helpful because doctors often have trouble isolating their analysis to the date last insured. AR 36.

Glovka was born on September 25, 1968, making her 47 years old on her date last insured. Glovka's testimony and the limited records she provided show that, while living in California, Glovka was diagnosed with degenerative disc disease in both the cervical and lumbar spine in August 2015. AR 269. At an orthopedic surgery consult, Glovka reported that she had been experiencing "severe symptoms of pain in the low back with radiation of pain down the right lower extremity all the way going [*sic*] to the right foot over the past several years." AR 266; *see also* AR 269. She also had migraine headaches "from time to time" and some neck pain radiating down her left arm, but she reported that her lower back pain was much worse than her neck pain. AR 269.

Glovka underwent a lumbar fusion in November 2015 to treat the degenerative disc disease and degenerative scoliosis in her lower spine. AR 266. During her first post-operative checkup in December 2015, Glova reported that she was "feeling a lot better than before" the surgery and that there was no more pain in her legs. AR 272. During her second post-operative checkup in February 2016, Glovka once more reported that her lumbar spine was feeling much better, but she was having a lot of neck pain. On examination, Glovka had minimal discomfort in the lumbar spine, but limited motion in her neck with radicular pain in the left arm causing numbness. AR 274. Glovka's doctor referred her for a new MRI of the cervical spine and noted that she could be considered for discectomy and fusion from C4-C7. AR 274.

At a follow up in June 2016, Glovka reported having recurrent pain in her low back with some radiation to her right leg. As for her neck, Glovka said it was "behaving for the time being." AR 276. Glovka said she was not interested in further MRIs because she was moving out of state. Her doctor prescribed pain medication. AR 276.

Glovka moved to Wisconsin in 2016. As the ALJ noted in his decision, there is a gap in Glovka's medical records between 2016 and 2018, during which time Glovka did not receive any treatment. AR 52. In 2018, Glovka presented to her new treating physician with "no acute distress" and appeared well. AR 321. Her chief complaint was anxiety. AR 319.  Her only physical complaint at that time was some hand pain. Glovka said she had been doing a lot of cooking and crocheting, which she had stopped because of pain, mostly in her thumbs. *Id.* Notably, Glovka did not report any back, neck, or arm pain at that time.  Thereafter, Glovka began reporting increased low back pain, for which she received steroid injections and physical therapy. However, few functional limitations were observed during physical examinations, apart from some tenderness and a slow and flexed forward gait. Glovka did not receive any treatment for neck pain or arm weakness or numbness.

At the hearing, Glovka's representative and the ALJ questioned Glovka about her limitations in 2015. Glovka testified that she had difficulty sleeping, twice weekly headaches, and pain in her left arm and neck. She also said she used a cane that she purchased at Wal-Mart. AR 54-56. She said she would call a friend who lived across the street to help with cleaning and cooking, although she was not asked how often or frequently that occurred. AR 56. Glovka said that she didn't treat with any doctors from 2016 until 2018 because she was trying to get acclimated and find a good doctor. AR 52.

After the hearing, the ALJ issued a decision denying Glovka's request for benefits. AR 17-24. Although Glovka's representative had submitted a post-hearing memorandum asking the ALJ to submit interrogatories to a medical expert, the ALJ declined to do so and instead decided the case on the existing record. AR 260. Using the five-step evaluation process outlined in 20 C.F.R. § 404.1520, the ALJ made the following findings with respect to the time period through Glovka's DLI of December 31, 2015: (1) Glovka did not engage in substantial gainful activity between January 2010 and December 31, 2015; (2) Glovka suffered from degenerative disk disease of the cervical and lumbar spines, a severe impairment; (3) Glovka did not suffer an impairment that met or medically equaled the severity of one of conclusively disabling impairments listed in 20 C.F.R. § 401, pt. 404, subpt. P, app. 1; (4) Glovka had the RFC to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), with restrictions on certain movements and environmental hazards; and (5) Glovka was capable of performing her past relevant work as an order clerk or receptionist.

The ALJ disagreed with the state agency physicians that there was insufficient evidence from which to evaluation Glovka's claim. AR 22. Although he agreed that the limited evidence from around the time of Glovka's DLI did not include significant physical examinations showing what Glovka's motor capabilities were at that time, the ALJ concluded that the evidence from the relevant time period, along with the more recent treatment records, were adequate to permit an evaluation of Glovka's capabilities. AR 21-22. Specifically, the ALJ found that Glovka's impairments were not as limiting as she alleged. The ALJ concluded that the record notations indicating that Glovka's lower back condition improved after her fusion, along with the gap in treatment after she moved to Wisconsin, reasonably supported an inference that Glovka's impairments had improved substantially after the procedure.

Even so, the ALJ concluded that Glovka's degenerative disc disease warranted a restriction to sedentary work. In addition, the ALJ found that Glovka was limited to: frequent balancing; occasional stooping, kneeling, crouching, crawling, and climbing of ramps or stairs; and never climbing ladders, ropes, or scaffolds. He also found that she should avoid concentrated exposure to vibration, unprotected heights and dangerous moving machinery. The ALJ found that these restrictions were warranted in light of recent records documenting Glovka's low back pain and forward-leaning and slow gait, and to mitigate the risk of falls. AR 22. However, he determined that greater exertional or postural limitations were not warranted given the evidence showing that she improved after her November 2015 surgery and other, more recent records finding that she had normal gait, strength, and range of motion. AR 22.

On June 7, 2023, the Social Security Administration's Appeals Council denied Glovka's request for review, making ALJ Schafer's decision the final decision of the Commissioner. Glovka then filed this appeal under 42 U.S.C. § 405(g).

OPINION

On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

**A. Development of the Record**

Glovka contends that the ALJ failed to adequately develop the record and improperly "played doctor" by not seeking a medical expert to opine on Glovka's limitations during the relevant time period. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (ALJ has a duty to "develop a full and fair record"). Glovka seizes on the ALJ's statement at the hearing that he was in a "difficult position" because he lacked any medical assessments of Glovka's limitations around the time of her DLI, on the one hand, and because he couldn't "play doctor," on the other. Glovka construes this statement as an admission by the ALJ that he lacked the expertise to assess Glovka's RFC.

I disagree. The ALJ merely floated the possibility that he might issue medical expert interrogatories given that there were no medical opinions concerning Glovka's functional limitations. Read fairly and in context, the ALJ's remarks cannot be construed as an admission that such interrogatories were required or that the record was incomplete without them; as the ALJ noted, he would decide after the hearing if he thought such interrogatories would be necessary or helpful. Plainly, he determined that they would not be.

Glovka contends that the ALJ breached his duty to develop the record, but she cites no authority holding that an ALJ is required to seek additional medical opinion evidence whenever the record lacks a medical opinion concerning the claimant's functional limitations. To the contrary, as the Seventh Circuit recently reaffirmed, the court defers to the ALJ's reasoned judgment on the question of how much evidence to gather. *Bertaud v. O'Malley*, 88 F.4th 1242, 1245 (7th Cir. 2023) (citing § 404.1512(b)(1)). "Deference comes from the practical reality that no record is 'complete'—one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes,

7

and so on." *Id.* (quoting *Kendrick v, Shalala*, 998 F.2d 455, 456–57 (7th Cir. 1993)). Therefore, "a represented claimant will not succeed on a duty-to-develop claim by arguing merely that the ALJ should have uncovered missing evidence or sought out all possible disabilities," or "by arguing the ALJ could have gathered more evidence[.]" *Id*. It is up to the ALJ to decide whether further development of key issues is necessary; the court will uphold that decision so long as it is "reasonable." *Id*. at 1245-46 ("[O]nce the ALJ reasonably decides that 'further development' of key issues is not necessary, the ALJ's decision to go no further is not a breach of duty.") (quoting *Flener ex rel. Flener v. Barnhart* 361 F.3d 442, 448 (7th Cir. 2004)).

I am persuaded that in this case, the ALJ was well within his discretion to assess Glovka's limitations based on the record before him rather than issue medical interrogatories. Glovka seems to believe that an ALJ's RFC assessment must rest upon a healthcare provider's opinion, but that is not the law. In fact, the Seventh Circuit has emphatically ruled that "the determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). ALJs must make their determination by considering all relevant evidence, medical or otherwise. 20 C.F.R. § 404.1546(c). While it's true that an ALJ "must not succumb to the temptation to play doctor," *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996), or use his own layperson's opinion to fill gaps in the evidence, he is not prohibited from drawing reasonable inferences about the claimant's limitations from the record as a whole.

*Suide v. Astrue*, 371 F. Appx. 684 (7th Cir. 2010), a nonprecedential opinion cited by Glovka, is not to the contrary. The error in *Suide* was that the ALJ failed to discuss significant medical evidence in the record, not that the ALJ failed to rely on a doctor's opinion to assess RFC. *Suide*, 371 Fed. Appx. at 690. Specifically, there was an evidentiary deficit left by the

8

ALJ's rejection of a physician's reports because "[t]he rest of the record simply d[id] not support the parameters included in the ALJ's residual functional capacity determination." 371 F. App'x at 690.

Here, by contrast, the record sufficiently supports the ALJ's conclusion that Glovka was capable of performing the requirements of sedentary work and therefore was not disabled before her DLI. As the ALJ noted, clinical notes following Glovka's lumbar fusion surgery in December 2015 documented substantial improvement in her low back pain and lower extremity radicular symptoms, with Glovka reporting that her leg pain was gone. Thereafter, Glovka did not seek treatment for about two years, a delay that she attributed to wanting to get settled before seeking a new doctor (as opposed to a lack of money or other financial reason for not seeking treatment). Contrary to Glovka's argument, the ALJ didn't need medical expertise to infer from the post-surgery notes documenting Glovka's improved lower back symptoms and her failure to obtain any treatment for two years after she relocated to Wisconsin that Glovka had improved substantially after her lumbar fusion in 2015. This was not a case of the ALJ interpreting "raw medical data;" rather, the ALJ simply applied his common sense. *Accord Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) (ALJ who mentioned lack of nerve impingement and treatment did not play doctor).

Moreover, as the ALJ reasonably observed, Glovka's post-DLI treatment furthered the conclusion that her conditions did not preclude her from performing sedentary work before December 2015. As reviewed in the ALJ's decision, AR 21, post-DLI examinations documented few objective abnormalities or physical limitations apart from a slow and flexed forward gait and some difficulty getting on and off an examination table. In fact, at a physical examination in April 2022, nearly seven and a half years after her DLI, Glovka was found to have normal

9

range of motion of the cervical and lumbar spine without tenderness. AR 21 (citing 495). Given that Glovka testified that her condition had worsened since 2015, the ALJ could reasonably conclude from the absence of severe objective findings even during the time period beginning in 2018 that Glovka was even less impaired in 2015.

In sum, although the evidence before the ALJ was somewhat sparse, I am not convinced that he abused his discretion or overstepped his bounds in concluding that he could decide Glovka's claim without a medical opinion concerning Glovka's functional limitations.

**B. RFC Determination**

Glovka next argues that the ALJ's RFC assessment failed to account for the "total limiting effects" of her impairments. Glovka doesn't claim that the ALJ misstated any of the medical evidence, nor does she identify specific medical records supporting greater restrictions than the ALJ found. The only evidence that she says the ALJ failed to properly evaluate was her subjective complaints, namely, her testimony that in 2015, she had hand numbness, difficulty sleeping, migraine headaches, and used a cane to ambulate. Glovka says the ALJ failed to properly analyze these symptoms in accordance with 20 C.F.R. § 404.1529, which instructs ALJs to consider a variety of factors in assessing the credibility of the claimant's pain complaints, including the claimant's daily activities, precipitating and aggravating factors, the effectiveness of pain medication and other treatment.

This argument is not persuasive. First, with respect to Glovka's headaches, the ALJ noted that in April 2015, Glovka "incidentally" reported experiencing migraine headaches from time to time. Glovka brought up headaches again in January 2019, at which time her provider recommended that she take Excedrin Migraine; no further reports of headaches were noted. The ALJ reasonably concluded from this "isolated history" that, contrary to Glovka's hearing

testimony, her headaches did not pose more than minimal functional limitations on her ability to work. AR 18.

With respect to Glovka's alleged cane use, the ALJ noted that there was no evidence that a cane was prescribed or medically necessary. AR 19. Likewise, as for her arm complaints, the ALJ found when discussing the listings that the records did not support a finding that Glovka was unable to initiate, sustain or complete work tasks with her upper extremities. *Id*. Further, as the ALJ noted, in 2018 Glovka reported having hand pain after doing a lot of cooking and crocheting, activities that counter Glovka's suggestion that she had upper extremity limitations.

The ALJ did not make a specific finding about the credibility of Glovka's reported sleep difficulties, although he noted her testimony. AR 20.  But all Glovka said about her sleep problems in 2015 was that she "couldn't sleep very well." AR 54.  This vague testimony is not evidence that, if credited, would have compelled the ALJ to conclude that she was incapable of performing full-time work. So, the ALJ did not err in failing to discuss it.  *See Grotts v. Kijakazi* 27 F.4th 1273, 1280 (7th Cir. 2022) (so long as ALJ does not completely "ignore an entire line of evidence" that is contrary to his ruling, he has satisfied his obligation).

In sum, the ALJ did not ignore Glovka's testimony about her subjective complaints. Instead, he reasonably concluded that none of those complaints warranted additional work restrictions given the lack of supporting objective medical evidence. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability ...."); 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled.").  Glovka bore the burden to prove she was disabled by producing medical evidence.  *Gedatus v. Saul*, 994 F.3d 893, 905

(7th Cir. 2021); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."). Having failed to identify any medical opinion or evidence that compels greater limitations than the ALJ found, Glovka has not shown any reason to remand this case. The ALJ's decision was supported by substantial evidence, so I must affirm it.

## ORDER

IT IS ORDERED that the decision of the Commissioner denying Monica Jean Glovka's application for a period of disability and disability insurance benefits is AFFIRMED. The clerk of court is directed to enter judgment in the Commissioner's favor and close this case.

Entered May 22, 2024.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge